UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLYDE WHITFIELD, III,<br><br>    Petitioner,<br><br>  v.<br><br>SCOTT FRAUENHEIM, Warden,<br><br>    Respondent. | Case No. C 18-7106 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY; AND DENYING RESPONDENT'S MOTION TO DISMISS AS UNNECESSARY**<br><br>(Dkt. No. 26) |

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2245.[1] The operative petition in this action is the amended petition. Respondent was ordered to show cause why the amended petition should not be granted. Respondent filed an answer denying petitioner's claims. Petitioner filed a traverse in which he seems to raise new claims. Respondent has filed a response to the traverse and a motion to dismiss. Petitioner has filed an opposition to the motion to dismiss in which he claims he did not mean to raise new claims. The motion to dismiss will be **DENIED** as unnecessary and is addressed further below. For the reasons stated below, the amended petition is **DENIED.**

## STATEMENT

**A.  PROCEDURAL BACKGROUND**

In 2016, following a bench trial, the Monterey County Superior Court convicted petitioner of two counts of assault by means likely to produce great bodily injury, false imprisonment by

---

[1] Scott Frauenheim, the current warden of the prison where petitioner is incarcerated, has been substituted as respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1    violence, criminal threats, dissuading a witness by force, unlawful taking of a vehicle, and two

2    counts of vandalism under $400. The court further found that petitioner had a prior strike

3    conviction for assault with a deadly weapon. The court had previously exercised its discretion to

4    strike petitioner's three other prior strike convictions pursuant to *People v. Superior Court*

5    *(Romero)*, 13 Cal. 4th 497, 529–30 (1996). On May 12, 2016, the court sentenced petitioner to a

6    total term of twenty years and four months in state prison.

7    On appeal, the California Court of Appeal affirmed the judgment. On November 15, 2017,

8    the California Supreme Court denied review.

9    On November 9, 2018, petitioner filed his federal petition under 28 U.S.C. 2254, in which

10   he raised two claims: (1) that trial counsel was constitutionally ineffective because he did not

11   object to testimony concerning petitioner's post-*Miranda*[2] silence, and (2) that the trial court erred

12   in its application of Section 654[3] of the California Penal Code.

13   On January 11, 2019, petitioner filed a petition for the writ of habeas corpus in California

14   Supreme Court, in which he raised multiple claims, including another claim of ineffective

15   assistance of counsel, arguing that his trial counsel rendered ineffective assistance of counsel by

16   failing to call two witnesses at trial.

17   On January 29, 2019, the court ordered respondent to show cause why the petition should

18   not be granted. On March 29, 2019, respondent answered. On May 2, 2019, petitioner filed his

19   traverse, in which he stated two new claims: (1) trial counsel was constitutionally ineffective

20   because he "refused to call two key witnesses[] in opposition to petitioner's request to do so," and

21   (2) the trial court violated the Double Jeopardy Clause. Traverse 4–7.

22   On May 22, 2019, the California Supreme Court summarily denied petitioner's state

23   habeas petition.

24   On May 31, 2019, in response to petitioner's traverse, respondent moved to dismiss the

25   petition as unexhausted.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] All statutes are from the California Penal Code unless otherwise indicated.

On December 2, 2019, the court denied respondent's motion to dismiss and required petitioner to choose how to proceed with his exhausted and unexhausted claims.

On December 16, 2019, petitioner elected to dismiss his unexhausted double jeopardy claim and proceed only with his exhausted claims.

On December 30, 2019, the court ordered respondent to show cause why the amended petition should not be granted.

On February 11, 2020, respondent filed an answer to the amended petition.

On March 9, 2020, petitioner filed another traverse, which will be referred to as the "second traverse." Second Traverse 1–5. As mentioned above, petitioner raises new claims in his second traverse. *See id.* He argues that trial counsel failed to investigate and find the university police officer who observed the victim, Jane Doe, driving behind petitioner's residence prior to the incident, and to call that officer as a witness. *Id.* at 5. Petitioner also argues that trial counsel could have called an "expert doctor" to testify that Jane Doe's normal vital signs directly after the incident were inconsistent with her testimony about the assaults committed by petitioner. *Id.* at 6. In addition, petitioner argues that his sentencing claim—that the trial court erred in its application of Section 654—also violated the federal constitution. *Id.* at 3. Petitioner did not raise any of these claims in the amended petition. *See* Pet. 1–5; Traverse 4–7.

On March 9, 2020, respondent filed a response to the second traverse and a motion to dismiss the amended petition as unexhausted, or in the alternative for the court to decline to consider the new claims raised in the second traverse. Resp. to Second Traverse 5.

On April 20, 2020, petitioner file an opposition to the motion to dismiss. Pet'r Opp. 1–4. Petitioner claims that he was not attempting to raise any new claims in his second traverse. *See id.* at 2-3. Petitioner requests that the court deny the pending motion to dismiss and "continue and proceed" with only the claims from the amended petition. *Id.* at 4. He states he agrees that any other claims that the court "deem[s] claims outside of the three [a]forementioned claims not be considered." *Id.*

**B.   FACTUAL BACKGROUND**

The following description of the evidence presented at trial has been taken in part from the

3

opinion of the California Court of Appeal (Resp. Exh. 5 at 2–5).[4]

*The Prosecution's Evidence*

Jane Doe dated petitioner from 2010 to 2013. In 2013, Jane Doe became concerned about petitioner's drug use and "paranoid" behavior.

Petitioner and Jane Doe went out to dinner on Friday, November 29, 2013. After dinner, they went to petitioner's apartment, and Jane Doe fell asleep.

Jane Doe woke up "before midnight." Petitioner showed Jane Doe pictures of men on his cell phone, and he accused her of "cheating on him." Jane Doe denied cheating. Petitioner straddled Jane Doe on the bed, struck her across the face, and accused her of lying. Immediately after petitioner hit Jane Doe, she could not hear out of her left ear and felt pain "all down the left side" of her face.

Petitioner told Jane Doe she "was not going to get out of there" until she provided names of men with whom she cheated. Petitioner choked her and said, "You're going to tell me or I'm going to kill you." In order to stop the choking, Jane Doe said she cheated with her ex-husband, Steve. Petitioner got off of Jane Doe and said, "You're just a whore." Jane Doe tried to get off the bed and leave, but defendant told her to not get off the bed. Petitioner then called her a "whore" again and told her to leave. Jane Doe started to walk out of the bedroom, but defendant grabbed her, threw her back on the bed, and told her to not get off the bed. He slapped her, and her glasses flew off.

Petitioner accused Jane Doe of cheating with other men, and she began looking for her cell phone. He told her she did not need her phone. He told her if she "tried to call for help" he "would kill [her] before police would even get in the door." Petitioner then said he loved Jane Doe and would never hurt her, and he went into the bathroom. Petitioner exited the bathroom, straddled Jane Doe, and pressed a pillow over her face. He said, "You're going to tell me. There's more." Jane Doe squirmed, bucked, and struggled to breathe. Petitioner said that he "knew how to not leave marks," and he put the pillow under Jane Doe's neck and choked her. As defendant

---

[4] The California Court of Appeal's summary of the facts of Petitioner's offense is presumed correct. *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. 2254(e)(1).

4

1    choked Jane Doe, he accused her of cheating and told her he "wanted other names." Jane Doe said

2    the name "Greg." Petitioner got off of Jane Doe and smoked a cigar.

3          Petitioner was "agitated" and suggested that he and Jane Doe go to Steve's house.

4    Petitioner slapped the right side of Jane Doe's face, causing pain and loud ringing in her right ear.

5    Petitioner straddled Jane Doe, choked her, and said, "There's more. You're not going to leave

6    here until I know all of them." Jane Doe said the name "Phillip." Petitioner began to "calm

7    down," and Jane Doe thought about ways to escape petitioner's apartment.

8          Petitioner went into the bathroom alone four or five times during the course of the attack.

9    When petitioner went into the bathroom the final time, Jane Doe, who was naked, ran out of the

10   bedroom, out the front door, and down the stairs. Petitioner followed her and said, "Now I am

11   going to kill you. Get your ass back upstairs." Jane Doe ran down the street.

12         Jane Doe flagged down a car. Jane Doe looked "panic stricken." She told the occupants of

13   the car, "My boyfriend tried to kill me. Please help me." A passenger in the car called 911 at 2:21

14   a.m. When police arrived, Jane Doe was "crying," "shaking," and "scared."

15         At 3:50 a.m., a police officer saw petitioner driving Jane Doe's car. The officer effected a

16   traffic stop, and he detained petitioner. Petitioner was taken to the police station and interviewed

17   by a police officer, Seth Morten, at 5:00 a.m.

18         Doctors examined Jane Doe on December 3 and 4, 2013. She complained of chest pain,

19   vision problems, and hearing problems. She had bruising on her chest, neck, and left arm. She

20   had a perforated eardrum. She had a posterior vitreous detachment on her right eye, which caused

21   her to see "floaters."

22         During the attack, petitioner broke Jane Doe's glasses. He also broke her tablet computer.

23   *Defense Evidence*

24         Petitioner testified on his own behalf. He testified that he and Jane Doe fell asleep together

25   on November 29, 2013. Petitioner woke up at 11:42 p.m. His birthday "was coming up at

26   midnight," so he woke Jane Doe up to "bring in [his] birthday with some sex." Afterward, Jane

27   Doe accused petitioner of "sleeping with someone else." They argued about monogamy, and

28   petitioner explained that Jane Doe had been "acting possessive."

5

1    Petitioner testified that Jane Doe "got upset" during the argument and scratched him.
2    Petitioner "pinned her down" and told her not to scratch him. Petitioner took the SD card out of
3    Jane Doe's tablet computer and put it in his cell phone. Petitioner looked at pictures on his phone,
4    Jane Doe told him that she "slept with Steve," and petitioner broke Jane Doe's tablet computer.
5    Petitioner told Jane Doe that they could not "continue this," they could not "continue to see each
6    other," and he was going to move to Thailand. Jane Doe scratched petitioner's face, he pushed her
7    against the wall, and he told her to stop scratching him. Jane Doe, who was naked, walked out of
8    petitioner's apartment. Petitioner told her to come inside and put on clothes. Jane Doe "took off
9    running" down the street.

10   Petitioner testified that he called 911. A few minutes after he called 911, petitioner got
11   into Jane Doe's car and drove around to look for her. Petitioner eventually parked the car and
12   tried calling Jane Doe's cell phone. Petitioner was unable to reach Jane Doe on her cell phone.
13   Shortly thereafter, police detained petitioner.

**ANALYSIS**

A.  **STANDARD OF REVIEW**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the federal habeas court looks to the last reasoned opinion from the state courts. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the state court has rejected a claim on the merits without explanation, this court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

**B.   CLAIMS FOR RELIEF**

As grounds for federal habeas relief, petitioner claims: (1) the trial court erred in its application of Section 654; and (2) trial counsel was constitutionally ineffective because (a) he did not object to testimony concerning petitioner's post-*Miranda* silence, and (b) he refused to call two additional witnesses.

1.   VIOLATION OF SECTION 654

Petitioner claims that the trial court erred by imposing multiple sentences for the same offense, in violation of Section 654. Specifically, petitioner contends that the sentence for several counts and related enhancements should be stayed pursuant to Section 654(a), which provides:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

7

Cal. Penal Code § 654(a). Petitioner claims that the assaults and threats were committed incident to the offense of false imprisonment by violence and menace.

A violation of state law, in this case Section 654, is not a valid basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Under 28 U.S.C. 2254(a), a writ of habeas corpus is available to a person in custody "only on the basis of some transgression of federal law binding on the state courts." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. at 119), *cert. denied*, 478 U.S. 1021 (1986). Even if the court assumes that the trial court misapplied Section 654, the Ninth Circuit has held that the resulting error does not give rise to a cognizable federal claim. *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (claim premised solely on misapplication of Section 654 is not cognizable of federal habeas review); *see also Swarthout v. Cooke*, 562 U.S. 216, 218–20 (2011) (alleged violation of state law is not remediable on federal habeas review, even if state law were erroneously interpreted or applied). The Ninth Circuit has also held more generally that "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Accordingly, petitioner is not entitled to relief on this claim because he failed to allege any federal constitutional error.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that trial counsel provided ineffective assistance because (a) he did not object to testimony concerning petitioner's post-*Miranda* silence in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976), and (b) he refused to call two additional witnesses.

Under *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the claim of ineffective assistance of counsel must be evaluated using two-prongs. Under the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Petitioner has the burden of "showing" that counsel's performance was deficient. *Toomey v. Bunnell*, 898 F2d 741, 743 (9th Cir. 1990). When assessing performance of defense counsel under this first prong, the reviewing court must be "highly deferential" and must not second-guess defense counsel's trial strategy. *Strickland*, 466 U.S. at 689. Thus, the relevant inquiry is not

8

1    what defense counsel could have done but rather whether the choices made by defense counsel
2    were reasonable. *See Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). And, counsel's
3    tactical decisions or "strategic choices" are virtually unchallengeable. *Strickland*, 466 U.S. at 690.
4    The failure to make evidentiary objections does not render assistance ineffective unless challenged
5    errors can be shown to have prejudiced the defense. *United States v. Gibson*, 690 F.2d 697, 703–
6    04 (9th Cir. 1982), *cert. denied*, 460 U.S. 1046 (1983). There is a "wide range of reasonable
7    professional conduct," and a "strong presumption" that counsel's conduct fell within that range.
8    *Strickland*, 466 U.S. at 689. Conclusory allegations that counsel was ineffective do not warrant
9    relief. *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).

Under the second prong of the *Strickland* test, petitioner bears the highly demanding" and "heavy burden" of establishing actual prejudice. *Williams v. Taylor*, 529 U.S. 362, 394 (2000). Petitioner has the burden of showing through "affirmative" proof that there was a "reasonable probability that but for counsel's unprofessional errors, the result . . . would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is defined under Strickland as "a probability sufficient to undermine confidence in the outcome." *Id.* If the absence of prejudice is clear, a court should dispose of the ineffectiveness claim without inquiring into the performance prong. *Id.* at 692.

         a.      <u>Failure to Object to Evidence of Petitioner's Post-*Miranda* Silence</u>

Petitioner claims that trial counsel was ineffective in failing to object to testimony concerning petitioner's post-*Miranda* silence. Petitioner testified in his defense at trial, and the prosecutor cross-examined him about differences between the statements that he made on the 911 call, the statements he made in his interview with Officer Seth Morten on November 30, 2013, and his testimony at trial (Reporter's Transcript ("RT") Exh. 2, Vol. 6, 1562-1565, 1567-1575). Specifically, the prosecutor cross-examined petitioner about his decision not to provide a written statement to Officer Morten after the officer had read a *Miranda* admonishment to petitioner.

The factual background of this claim, as described by the California Court of Appeal and reasonably supported by the record, is summarized below (Resp. Exh. 5 at 6–8).

On cross-examination, the prosecutor asked petitioner if he declined to write a "detailed

9

summary" of events during the interview with Officer Morten, as follows:

> Q. Now, isn't it true during your interview with . . . Officer Morten, you talked to him about the events of November 30th, and then he asked you to write a more detailed summary; correct?
>
> A. Yes.
>
> Q. He wanted more details from you; correct?
>
> A. He was trying to imply details that he wanted me to write.
>
> Q. Well, he was offering for you to write a detailed statement; correct?
>
> A. Yes.
>
> Q. And you declined?
>
> A. Yes.

RT Exh. 2, Vol. 6, 1567-1568. Later on, during cross-examination, the prosecutor asked petitioner if he agreed that his testimony in court was "a lot more detailed than what [he] told Officer Morten." Resp. Exh. 5 at 6. Petitioner responded, "He was trying to detail it for me." *Id.* After petitioner confirmed that Officer Morten provided paper and told him to "write out a detailed statement," the prosecutor asked petitioner, "And your response was, 'How can I fill it out with something that did not happen?'" *Id.* Petitioner testified, "That was my statement." *Id.* The prosecutor asked petitioner if he then "got a little upset" and told Officer Morten he was "not being fair." *Id.* Petitioner responded, "Yes, ma'am." *Id.* The prosecutor asked petitioner whether he accused Officer Morten of "only believing Jane Doe." *Id.* Petitioner responded, "Yes, ma'am." *Id.*

The prosecutor called Officer Morten as a rebuttal witness. *Id.* at 7. Officer Morten testified that he gave petitioner an opportunity to write a statement during the interview, he advised petitioner of "the importance of getting his side of the story out on paper," and petitioner "refused to provide a written statement." *Id.* Officer Morten testified that, after petitioner refused to write a statement, petitioner accused Officer Morten of "automatically taking Jane Doe's side," "already finding him at fault," and "treating him unfairly." *Id.*

1  On direct appeal, petitioner claimed that trial counsel should have objected to this line of
2  questioning because the questions punished him for his post-*Miranda* silence, and her failure to do
3  so constituted ineffective assistance of counsel. The state appellate court rejected petitioner's
4  claim. The court applied the *Strickland* standard for ineffective assistance of counsel, finding that
5  petitioner had not shown deficient performance and that the record provided a valid tactical reason
6  for defense counsel's failure to object to that evidence. The court stated as follows:

> Defense counsel could have reasonably concluded that defendant's omissions during his interview and defendant's failure to provide a written statement during that interview were helpful to the defense. The circumstance that defendant was not completely forthcoming with Officer Morten arguably suggests that Officer Morten was biased against defendant. Such bias would in turn suggest a police investigation that was unfair. Indeed, the testimony now challenged showed that defendant believed himself to be the victim of an unfair investigation. When the prosecutor asked defendant about his failure to provide a written statement, defendant testified that Officer Morten "was trying to imply details" that should be included in such a statement, Officer Morten was "not being fair," and Officer Morten was "only believing Jane Doe." When the prosecutor questioned Officer Morten about defendant's lack of candor in the interview, Officer Morten testified that defendant accused him of "automatically taking Jane Doe's side," "already finding him at fault," and "treating him unfairly." The prosecutor's closing argument acknowledged that defendant believed the police investigation to be unfair. When the prosecutor briefly mentioned defendant's failure to provide a written statement during her closing argument, she noted that defendant accused Officer Morten of "not being fair." Given this record, defense counsel could have reasonably determined that the prosecutor's argument and evidence regarding defendant's selective silence during the interview helped the defense by suggesting a biased police investigation.
>
> In sum, defendant's omissions during his interview with Officer Morten and his failure to provide a written statement during that interview arguably suggest a police investigation that was biased against defendant. The record thus provides a valid tactical reason for defense counsel's failure to object to such evidence and his failure to object to the prosecutor's brief argument regarding such evidence. Defendant cannot show deficient performance, and his claim of ineffective assistance of counsel fails. (*See generally People v. Farnam* (2002) 28 Cal. 4th 107, 202 [failure to object is not deficient performance where the reviewing court is "not convinced that there could be no valid tactical reason for choosing not to object"].)

Resp. Exh. 5 at 9–10.

The state appellate court reasonably determined that petitioner failed to show deficient performance under the first prong of *Strickland* upon finding that trial counsel could have had valid tactical reasons not to object to the prosecution's questions about petitioner's post-*Miranda*

silence during his police interview. *See id.* In *Doyle*, the United States Supreme Court held that the prosecution may not use for impeachment purposes a defendant's post-*Miranda* silence. *See* 426 U.S. at 617. As mentioned above, petitioner claims that trial counsel should have made a *Doyle* objection when the prosecutor elicited during cross-examination and mentioned during closing arguments the fact that petitioner, after being read his *Miranda* rights, "refused to give a written statement and refused to answer any further questions . . . ." Pet. at 4. Thus, the prosecution used petitioner's post-arrest silence in this case to impeach his testimony at trial.

Trial counsel did not act unreasonably in failing to make a *Doyle* objection, as evident from the record. After receiving his *Miranda* warnings, RT Exh. 2, Vol. 7, 1825-1826, petitioner made certain statements that conflicted with his later testimony. For example, petitioner told Officer Morten that Jane Doe first attacked him around 10:45 p.m., but at trial, petitioner testified that the couple was asleep between 10:45 and 11:42 p.m., that at approximately 12:05 a.m. they had sex for about an hour, and that Jane Doe did not attack him until after 1:00 a.m. *Id.* at 1827; RT Exh. 2, Vol. 6, 1534-1536, 1541, 1570-1571. Petitioner had told Officer Morten that he "consensually tied [Jane Doe] down" during sex on November 30, but then petitioner testified that he did not do so on that night. *Id.* at 1578; RT Exh. 2, Vol. 7, 1829-1830, 1834. Petitioner also testified that while he was driving around, he had called Jane Doe's cell phone, but he had told Officer Morten that he believed her cell phone was in his apartment. *Id.* at 1838-1839; RT Exh. 2, Vol. 6, 1552, 1579. The state appellate counsel reasonably determined that trial counsel could have believed that an explanation for the discrepancies would be helpful to petitioner's defense. Resp. Exh. 5 at 10.

In explaining his decision not to provide a written statement, petitioner testified that Officer Morten "was trying to imply details that he wanted me to write." RT Exh. 2, Vol. 6, 1567. Petitioner told Officer Morten that that officer was not being fair because he "'automatically'" took Jane Doe's statements over petitioner's and was asking petitioner to write out a detailed statement "with something that did not happen." *Id.* at 1576-1577. Petitioner thus had a perception of a biased investigation based on his testimony that he "felt [Officer Morten] was biased from the beginning of the conversation." *Id.* at 1597-1598. If credited, this testimony

would have tended to show such a biased investigation affected petitioner's state of mind, which helped to explain the discrepancies between petitioner's testimony at trial and his statements in his police interview. Trial counsel elicited testimony from petitioner on redirect that Officer Morten began the interview by "badgering" him, making petitioner "feel reluctant, nervous, and as if [he] could not trust the officer . . . ." *Id.* at 1598. Trial counsel also elicited petitioner's view that Officer Morten appeared biased, in order to show "[h]is state of mind as to why he didn't come forth with other details." *Id.* at 1598-1599. Petitioner's trial counsel emphasized in his closing argument that petitioner's statements to Officer Morten bolstered petitioner's credibility and the absence of some facts was attributable to petitioner "at that point [not] feel[ing] like he was in a place where he could tell . . . Officer Morten the full story . . . ." RT Exh. 2, Vol. 7, at 1877.

Because trial counsel could reasonably have believed that petitioner's testimony about not making a written statement was helpful to the defense, he reasonably could have chosen not to object to it. *See Robertson v. Pichon*, 849 F.3d 1173, 1188 (9th Cir. 2017) ("[T]he state court's determination that . . . counsel could have had strategic decisions for not objecting to admission of [certain evidence] was not an unreasonable application of *Strickland*, which mandates a strong presumption that counsel acted for tactical reasons rather than through sheer neglect.") (citation and internal quotation marks omitted). Especially in light of the double deference under AEDPA and *Strickland*, petitioner has not shown he is entitled to relief on this claim based on the state appellate court's objectively reasonable application of the first prong of *Strickland*. *See Harrington*, 562 U.S. at 105–06; 28 U.S.C. 2254(d).

Even if trial counsel had successfully objected to testimony about petitioner's post-*Miranda* silence in his interview with Officer Morten, there is no reasonable probability that the outcome at the bench trial would have been different. *See Strickland*, 466 U.S. at 693. The testimony at issue was not the main theme of the closing argument. The prosecutor mentioned petitioner's refusal to provide a written statement only in passing at the end of her rebuttal closing argument, as follows: "And that's exactly why Officer Morten begged him over and over again, give a detailed statement so your statement is saved and can be seen in court, but he declined . . . [and] turned the tables and said, "You're not being fair." RT Exh. 2, Vol. 7, 1892. In rendering

its verdict, the trial court did not reference petitioner's post-*Miranda* silence as a pertinent fact. RT Exh. 2, Vol. 8, 2103. Instead, the trial court found that petitioner's testimony of "being a victim" "just d[id] not have the ring of truth." *Id.* The court noted that "lots of facts" were inconsistent with petitioner's claim that he was the victim, including that petitioner drove a distance away in Jane Doe's car, left his home after making the 911 call claiming he was attacked, and then called Jane Doe "to look for her" despite knowing that her cell phone was in his apartment. *Id.* By contrast, the trial court found Jane Doe's testimony "credible." *Id.* Jane Doe's testimony that she was the victim was also corroborated by other evidence, including the perforation to her eardrum on the same side petitioner had hit her, the witnesses' observation of Jane Doe at 2:00 a.m. running naked on the street and "panic stricken," and the photographs of bruises on Jane Doe's arms and chest. RT Exh. 2, Vol. 3, 608-610, 631, 650-651, 664-665, 669-670, 681-684; RT Exh. 2, Vol. 5, 1209-1210. On this record, petitioner has not shown a reasonable probability of a better result at his bench trial had trial counsel successfully objected to testimony about petitioner's post-*Miranda* silence. *See Strickland*, 466 U.S. at 693.

The California Court of Appeal rejection of petitioner's claim of ineffective assistance of counsel based on the failure to object to testimony concerning petitioner's post-*Miranda* silence was neither contrary to nor an unreasonable application of federal law. Accordingly, petitioner is not entitled to habeas relief on this claim.

b. Failure to Call Two Additional Witnesses

In his final claim, petitioner argues that his trial counsel rendered ineffective assistance of counsel by failing to call two additional "key witnesses" at trial, Andrea Dominguez-Blanco and Christopher Carlon. Traverse 4–6. The California Supreme Court summarily denied this ineffective-assistance claim, and this court must determine if reasonable arguments support its denial in order to decide if AEDPA precludes relief. *See Harrington*, 562 U.S. at 102–03.

The duty to investigate and prepare a defense does not require that every conceivable witness be interviewed. *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995). A claim of failure to interview a witness cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel. *Eggleston v. United States*, 798 F.2d 374, 376 (9th

14

1    Cir. 1986). When the record shows that the lawyer was well-informed and the defendant fails to

2    state what additional information would be gained by the discovery he now claims was necessary,

3    an ineffective assistance claim fails. *Id.* A defendant's mere speculation that a witness might

4    have given helpful information if interviewed is not enough to establish ineffective assistance. *See*

5    *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).

6          To establish prejudice caused by the failure to call a witness, a petitioner must show that

7    the witness was likely to have been available to testify, that the witness would have given the

8    proffered testimony, and that the witnesses' testimony created a reasonable probability that the

9    jury would have reached a verdict more favorable to the petitioner. *Alcala v. Woodford*, 334 F.3d

10   862, 872-73 (9th Cir. 2003).

11         Here, the California Supreme Court could have concluded that petitioner's ineffective

12   assistance of counsel claim failed on both the deficient performance and prejudice prongs of the

13   *Strickland* test. First, the state supreme court could have reasonably concluded that petitioner did

14   not establish trial counsel's incompetence because he provided no evidence, such as a declaration

15   from defense counsel, to show that defense counsel did not have a reasonable tactical basis for his

16   decision not to call Dominguez-Blanco or Carlon to testify. Under *Strickland*, the court "must

17   indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

18   professional assistance." 466 U.S. at 689. Petitioner bears the burden to show deficient

19   performance, *id.* at 687, and "[i]t should go without saying that the absence of evidence cannot

20   overcome" that strong presumption, *Burt v. Titlow*, 571 U.S. 12, 23 (2013). Because petitioner did

21   not submit a declaration from counsel, the California Supreme Court could reasonably have

22   concluded that petitioner did not carry this burden. *See Gentry v. Sinclair*, 705 F.3d 884, 899-900

23   (9th Cir. 2013) (state court did not unreasonably find no deficient performance where petitioner

24   did not submit affidavit from counsel on claim at issue).

25         Petitioner argues that Dominguez-Blanco's testimony that a police officer "witnessed [Jane

26   Doe] driving around the petitioner's residence" would have "refute[d] [Jane Doe's] testimony that

27   she was not obsessive, and that she was trying to 'break things off' with the petitioner, proving her

28   in perjury of the court." Traverse 4. Petitioner also argues that Carlon's testimony that he did not

1  witness any bruises on Jane Doe would have "refute[d] Jane Doe's claim of having bruises" and
2  "display[ed] that Jane Doe may have fabricated evidence by later bruising herself." *Id.* at 5.

3  In relation to Dominguez-Blanco's purported testimony refuting Jane Doe's testimony
4  about her attempts to break-up with petitioner, the record shows that Jane Doe testified that she
5  and petitioner dated for several years and were "together" at the time of the crimes despite having
6  had "some rocky times where [Jane Doe] tried to distance" herself.  RT Exh. 2, Vol. 3, 636-637.
7  Jane Doe also testified on cross-examination that she and petitioner "were together quite often," so
8  she was "sure" that she had spent time with petitioner in the week before the crimes.  *Id.* at 691.
9  During the evening of the crimes, Jane Doe picked petitioner up in her car, had dinner with
10  petitioner, returned to his home, slept in his bed, and manually copulated him.  *Id.* at 636, 646-
11  648, 665-666.  In light of evidence that Jane Doe visited petitioner's home in the period leading up
12  to the crimes, trial counsel could have reasonably concluded that additional evidence of that fact
13  would not have aided the defense.

14  Similarly, trial counsel could reasonably have chosen not to call Carlon to testify that he
15  did not observe bruising on Jane Doe when he examined her.  The trial court could also compare
16  the photographs taken by the police officer with photographs taken later that Jane Doe agreed
17  showed "bruises [that were] a little different from the date that they took [the pictures] on." *Id.* at
18  683.  In light of that evidence, and the fact that bruises may darken over time (*see* RT, Exh. 2, Vol.
19  4, 913), defense counsel could reasonably have concluded that evidence that Carlon did not
20  observe any bruises on Jane Doe was not compelling evidence that Jane Doe was lying about the
21  extent of her injuries or that she later caused her own significant injuries, including a perforated
22  eardrum, in order to frame petitioner.

23  Both reasonable conclusions suggest that trial counsel's decision not to use petitioner's
24  additional witnesses was a *strategic* decision.  See *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir.
25  1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or
26  not to proffer a witness at trial.").  Accordingly, the state supreme court's rejection of petitioner's
27  claim that counsel was ineffective for failing to call these two additional witnesses was reasonable.
28  Petitioner is not entitled to federal habeas relief on this claim.

### C.   NEW CLAIMS

As mentioned above, Petitioner appears to raise new claims in his second traverse. *See* Second Traverse 3–6. Respondent moves to dismiss the amended petition as unexhausted.

In his opposition to the motion to dismiss, petitioner denies raising new claims and appears to recognize that any alleged new claims are not properly before the court and should not be considered. *See* Pet'r Opp. at 4. Petitioner concedes that the court should only consider the claims from the amended petition. *Id.* at 4.

New claims may not be raised in a traverse. *See Cacoperdo*, 37 F.3d at 507. For that reason alone, any new claims in the second traverse should not be considered further, and the motion to dismiss should be denied as unnecessary. Because respondent has filed a motion to dismiss and the issues have been briefed by the parties, the court will further elaborate on its reasons for denying the motion as unnecessary.

To begin with, petitioner's new claims are not exhausted. Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings must first exhaust state judicial remedies by fairly presenting the federal claim to the state's highest court. *See* 28 U.S.C. 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982).

As for the new sentencing claim, respondent argues that petitioner's challenge to his sentence in the state courts "was based only on . . . [S]ection 654, not on the federal constitution." Resp. to Second Traverse 5. The court agrees with respondent that petitioner's sentencing claim should only be limited to a violation of Section 654. While courts are more flexible in interpreting *pro se* petitions, *Sanders v. Ryder*, 342 F.3d 991, 999 (9th Cir. 2003), a *pro se* petitioner is still required to enumerate his constitutional claim specifically, rather than merely presenting facts that support the claim, *Picard v. Connor*, 404 U.S. 270, 277 (1971). Even if a petitioner submits a factual basis for a claim to state court, moreover, the claim is not fairly presented when the facts exclusively support another claim. *Koerner v. Grigas*, 328 F.3d 1039, 1046-48 (9th Cir. 2003). Because the state supreme court petition does not include a sentencing claim involving a violation of the federal constitution, that petition did not fairly present such a claim to the state supreme court, as is required to satisfy the federal exhaustion requirement. The purported new sentencing

17

claim involving a violation of the federal constitution set forth in the second traverse is therefore not exhausted.

In certain circumstances, a federal petition that includes unexhausted claims may be stayed rather than dismissed. District courts have discretion to issue stays where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005). Petitioner does not explain, let alone show good cause for, his failure to exhaust his new claims. Good cause turns on whether the petitioner can set forth a reasonable excuse supported by sufficient evidence to justify the failure to exhaust. *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). As petitioner does not show good cause for his failure to exhaust the claim, he cannot be granted a stay. Nor has he requested a stay, for that matter. Petitioner instead claims that he did not raise any new claims and requests that the court proceed with only the claims from his amended petition. Accordingly, respondent's motion to dismiss is **DENIED** as unnecessary.

## CONCLUSION

For the foregoing reasons, the amended petition for a writ of habeas corpus is **DENIED**. Respondent's motion to dismiss (ECF No. 26) is **DENIED** as unnecessary.

A certificate of appealability will not issue because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the United States Court of Appeals.

Scott Frauenheim has been substituted as respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

The clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

Dated: October 14, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

18